FILED

2021 NOV -2 PM 1:59

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ___kcc___

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW NELSON TUNSTALL,<br>ROBERT REYES, JR., and<br>KYLE GEORGE DAVIES,<br>                Defendants. | **UNDER SEAL**<br><br>Criminal No. **A21 CR 223 LY**<br><br>Count One: 18 U.S.C. § 371 (Conspiracy)<br><br>Counts Two–Four: 18 U.S.C. §§ 1343 and 2 (Wire Fraud)<br><br>Counts Five–Six: 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (Money Laundering)<br><br>Counts Seven–Eight: 18 U.S.C. §§ 1957 and 2 (Money Laundering) |

## INDICTMENT

The Grand Jury charges:

### GENERAL ALLEGATIONS

At all times material to this indictment:

1. Defendant MATTHEW NELSON TUNSTALL was a resident of Plano, Texas. TUNSTALL operated Supreme Dream Media LLC ("Supreme Dream") and Matte Media Creations Inc. ("Matte Media").

2. Defendant ROBERT REYES, JR. was a resident of Hollister, California. REYES operated Modern Media Group LLC ("Modern Media"). TUNSTALL and REYES were business associates.

3. Defendant KYLE GEORGE DAVIES was a resident of Austin, Texas. DAVIES was TUNSTALL's cousin.

4. Individual 1 was a friend of DAVIES. Individual 1 resided within the Western District of Texas.

1

5. Individual 2 was DAVIES' girlfriend.

6. Individual 3 was an associate of DAVIES. Individual 3 resided within the Western District of Texas.

7. Individual 4 was REYES' relative.

8. Individual 5 was a certified public accountant who was hired by Liberty Action Group Political Action Committee ("Liberty Action Group") and Progressive Priorities Political Action Committee ("Progressive Priorities") to conduct certain bookkeeping activities on behalf of both entities. Individual 5's responsibilities included receiving monthly reports from REYES regarding Liberty Action Group's and Progressive Priorities' fundraising activities; separating the financial transactions outlined in those reports by receipts or disbursements; entering those activities into a format compliant with the reporting systems of the Federal Election Commission ("FEC"); and obtaining REYES' final approval before filing the monthly reports for Liberty Action Group and Progressive Priorities with the FEC.

9. Company A is a communications company that provided a platform for Liberty Action Group and Progressive Priorities to disseminate telephone calls that used a computerized autodialer to deliver a pre-recorded message, often referred to as "robocalls."

10. Candidate 1 was the Political Party A candidate for the Office of the President of the United States in the 2016 federal election cycle.

11. Candidate 2 was the Political Party B candidate for the Office of the President of the United States in the 2016 federal election cycle.

**A. The Federal Election Commission**

12. The FEC was an agency of the United States Government responsible for regulating, among other things, political committees formed to support candidates for federal,

elected office through fundraising and expenditures. To deter abuses, instill public confidence in the election process, and provide voters and contributors with information about election-related spending, the FEC was responsible for receiving and making available to the public specific, accurate information about the amounts and sources of political contributions to federal candidates and political committees.

13. Under the Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, Section 30101, *et seq.* ("Election Act"), a "political committee" is "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year." Each political committee is required to file, within 10 days of becoming such a committee, a "statement of organization." This statement is required to contain information including the name, address, and type of committee; and the name and address of the treasurer of the committee.

14. In addition to the statement of organization, the Election Act and the FEC required political committees that are not authorized by a candidate for federal office to report to the FEC contributions and expenditures that were more than $200 individually or when aggregated over the course of a calendar year. For such contributions, the Election Act and the FEC required unauthorized committees to report the contributor's full name, mailing address, occupation, and the name of his or her employer, if any, and the date of receipt and amount of contribution. For expenditures, the Election Act and the FEC required unauthorized committees to report the amount of the expenditure, the date of payment, the name and address of the payee, and the purpose of the expenditure. These periodic reports, which were filed with the FEC for the FEC to make publicly available, were intended to provide the public with a record of all contributions to candidates for

3

federal office and expenditures made to benefit candidates for federal office in an effort to combat *quid pro quo* corruption or the appearance of corruption. As such, they constituted the public's only guaranteed window into the sources of funding for federal election campaigns.

15. In addition to the statement of organization, the Election Act required political committees that are not authorized by a candidate for federal office to report to the FEC periodic reports of receipts and disbursements of $200 or more, identifying all contributions received by or on behalf of such a political committee, the identity of each person whose contribution or contributions had an aggregate amount or value in excess of $200 within the calendar year, the total amount of all disbursements, and the total amount of disbursements in specific categories, including contributions made to other political committees and independent expenditures. These periodic reports, which were filed with the FEC for the FEC to make publicly available, were intended to provide the public with a record of all contributions to candidates for federal office and expenditures made to benefit candidates for federal office in an effort to combat *quid pro quo* corruption or the appearance of corruption. As such, they constituted the public's only guaranteed window into the sources of funding for federal election campaigns.

16. Among the types of political committees required to register with and report to the FEC were "non-connected" political committees. Certain non-connected political committees, often referred to as "political action committees" or "PACs," were permitted to contribute directly to the campaign committee of a federal candidate.

### B. The Political Action Committees

17. Liberty Action Group was a political action committee that claimed to raise political contributions to support the election of Candidate 1 in 2016 and to support the Political Party A agenda after Candidate 1's election. TUNSTALL, REYES, and DAVIES opened or

4

caused to be opened a bank account for the PAC at Financial Institution A in the Western District of Texas.

18. Progressive Priorities was a political action committee that claimed to raise political contributions to support the election of Candidate 2 in 2016. TUNSTALL, REYES, and DAVIES opened or caused to be opened a bank account for the PAC at Financial Institution B in the Western District of Texas.

19. From in and around January 2016 through in and around April 2017, rather than using contributions for political activity, Liberty Action Group and Progressive Priorities transferred approximately $1.5 million in political contributions to TUNSTALL's personal and business bank accounts; approximately $714,000 in political contributions to accounts held by REYES; and approximately $84,385 in political contributions to accounts held by DAVIES.

## COUNT 1
## CONSPIRACY TO COMMIT WIRE FRAUD
## (18 U.S.C. § 371)

20. Paragraphs 1 through 19 are incorporated and re-alleged as if fully set forth herein.

21. Beginning in and around January 2016, and continuing until at least in and around April 2017, in the Western District of Texas and elsewhere, Defendants MATTHEW NELSON TUNSTALL, ROBERT REYES, JR., and KYLE GEORGE DAVIES, and others known and unknown, did knowingly and unlawfully conspire and agree together and with each other to:

    a. Devise a scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises, and for the purposes of executing or attempting to execute that scheme and artifice to defraud caused to be transmitted by means of wire communication in interstate commerce writings, signs, and signals, in violation of 18 U.S.C. § 1343; and

b. Knowingly and willfully cause the submission of a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, in violation of 18 U.S.C. § 1001(a)(2).

### Purposes of the Conspiracy

22. It was a purpose of the conspiracy for TUNSTALL, REYES, DAVIES, and others to enrich themselves by obtaining money under false pretenses from supporters of candidates for the Office of the President of the United States during the 2016 election cycle.

23. It was a purpose of the conspiracy for TUNSTALL, REYES, DAVIES, and others to conceal from the public, donors, and the FEC the nature and purpose of the scheme and artifice to defraud, including the identities of the members of the conspiracy and the conspirators' use of the contributions for their personal benefit.

### Manner and Means

The manner and means of the conspiracy included, but were not limited to, the following:

24. Liberty Action Group and Progressive Priorities obtained money based on false and misleading representations about their purported efforts, activities, and spending. Specifically, through written fundraising solicitations, telephone call solicitations, and other means, Liberty Action Group and Progressive Priorities falsely represented to donors that their donated funds would be used in support of candidates for the Office of the President of the United States, including through direct contributions to authorized campaign committees.

25. TUNSTALL, REYES, and DAVIES instead used the funds they acquired through the scheme to pay for additional fraudulent solicitations for money, to enrich themselves directly, and to support their independent, unrelated business ventures. Of the approximately $3.5 million

raised by Liberty Action Group and Progressive Priorities, only approximately $19 were distributed to any candidate's authorized campaign committee or to any political cause, while a total of more than $1.5 million was used to benefit TUNSTALL, REYES, and DAVIES.

26. TUNSTALL, REYES, and DAVIES used the names of others—at times without their knowledge or permission—and forged names on filings to the FEC and on other documents relating to the PACs to conceal and disguise their role in the fraudulent scheme.

27. Liberty Action Group and Progressive Priorities used robocalls and other means to solicit money under false pretenses.

28. TUNSTALL and REYES laundered money through Company A to conceal from the FEC, the public, and donors the significant portion of the money that they took for personal enrichment.

29. TUNSTALL and REYES concealed the true nature of many of the payments to Company A by falsely reporting them, and causing them to be falsely reported, to the FEC as political expenditures for "Advertising."

## Overt Acts

In furtherance of the conspiracy, and to accomplish its purpose, one or more members of the conspiracy committed or caused to be committed the following overt acts in the Western District of Texas and elsewhere:

### A. Fraud through Liberty Action Group Political Action Committee

#### i. *Filings with the FEC*

30. On or about January 13, 2016, TUNSTALL and REYES caused Liberty Action Group to be registered with the FEC by filing a Statement of Organization. The Statement of Organization listed an address in Austin, Texas, and provided two committee email addresses: one

held by REYES and one held by Individual 1. Liberty Action Group identified its Treasurer as Individual 5 and its PAC Director as Individual 1.

31. On or about September 23, 2016, TUNSTALL and REYES caused Liberty Action Group to file an amended Statement of Organization, removing REYES' email address as a committee email address and identifying Individual 1 as its Treasurer in place of Individual 5.

32. On or about April 23, 2017, TUNSTALL and REYES caused Liberty Action Group to file a Termination Report with the FEC. The report claimed only approximately $74.54 in cash on hand as of March 31, 2017, and no operating expenditures from January 1, 2017, through March 31, 2017, though TUNSTALL and REYES caused approximately $213,713 to be transferred out of Liberty Action Group's bank account during this time period.

33. On or about June 26, 2017, TUNSTALL and REYES caused Liberty Action Group to falsely report to the FEC disbursements totaling approximately $60,000 to Company A for "Advertising" on June 21, 2016, when in fact that same day approximately $30,000 of that sum was transferred from Company A to TUNSTALL's and REYES's companies, Modern Media and Supreme Dream.

34. From on or about September 9, 2016, through on or about July 31, 2017, TUNSTALL and REYES caused Liberty Action Group to report to the FEC that it raised a total of approximately $3,128,874 for the period from on or about January 13, 2016, through on or about April 23, 2017. TUNSTALL and REYES further caused Liberty Action Group to report total disbursements of approximately $3,128,132 for this period.

ii. *Misrepresentations to Potential "Contributors"*

35. TUNSTALL, REYES, and DAVIES caused Liberty Action Group to use Company A's platform to solicit money from the public through false and misleading representations, including the below.

- [*Voice of Candidate 1*]: I'm [Candidate 1]. [Candidate 2] will release violent criminals from jail and put innocent Americans at risk. I'm going to put criminals behind bars and guarantee that law-abiding Americans have the right to self-defense. [*Voice of Announcer*]: Your fight to help defeat [Candidate 2] and elect [Candidate 1] starts right now. Why? [Candidate 1] is no longer self-funding and we now need you and millions opposed to [Candidate 2] to invest generously to help elect [Candidate 1] for president. Do your part to make an emergency investment to the campaign by pressing one now. For contributing $25 or more, we'll give you a free [Candidate 1] 2016 campaign sticker. Or if you find yourself generously able to give $1,000 or more, we'll send you out an exclusive signed photo of [Candidate 1], suitable for framing. So please press 1 right now to make an emergency investment in the campaign to elect [Candidate 1] for president. Again, please press 1 to make an emergency contribution right now. To unsubscribe, press 9 or call 800-335-6955.

- [*Voice of Candidate 1*]: I'm asking you to join me in this next chapter of this unbelievable and unprecedented movement as we work towards prosperity at home, peace abroad, and new frontiers in science, technology, and space. [*Voice of Announcer*]: With less than two days before [Candidate 1] is sworn into office, [Candidate 1] and the [Candidate 1] team need your urgent support to finalize

9

preparations on our 100-day plan to build a wall, repeal Obamacare, and rebuild our infrastructure. To do this, [Candidate 1] needs your help to help fund [Political Party A] by raising the remaining $4.5 million needed to make sure [Political Party A] is well-funded enough to take on bitter [Political Party B] who will stop at nothing to block anything [Candidate 1]. That is why we must ask you for a generous investment to help [Candidate 1] help fund [Political Party A]. For your generous support, we'll send you a free [Candidate 1] sticker as a way of saying thank you. So please press 1 to donate to help [Candidate 1] to help [Political Party A]. Again, press 1 to donate now. Press 9 to unsubscribe.

- [*Voice of Candidate 1*]: I'm [Candidate 1]. We can come back bigger and better and stronger than ever before. [*Voice of Announcer*]: [Candidate 1] needs your urgent support to come back big against crooked [Candidate 2]. To do this, we must hit our emergency fundraising goal before the FEC deadline. Can we count on you to help make a contribution of your own? [Candidate 1] is going to win because of people like you contributing whatever you can to tear down the corrupt establishment. So please, press 1 to contribute to help us crush our ten million dollar fundraising goal before the FEC end-of-the-month deadline. Again, press 1 to make an emergency contribution to help elect [Candidate 1]. Press 9 to unsubscribe.

36. TUNSTALL, REYES, and DAVIES provided scripts to be used by live call center operators when individuals who received Liberty Action Group's robocalls agreed to make a contribution, or when individuals called into the telephone number provided in radio

advertisements disseminated by Liberty Action Group. These scripts used false and misleading representations, including the below.

- Hello, this is (full name), thanks for supporting the Liberty Action Group PAC to help [Candidate 1] to become the [Political Party A] nominee. Can we count on you to help make sure this election isn't STOLEN from the American people and help elect [Candidate 1] with $100 or $200 today?

**B. Fraud through Progressive Priorities Political Action Committee**

  **i.  *Filings with the FEC***

37.  On or May 11, 2016, TUNSTALL and REYES caused Progressive Priorities to register with the FEC by filing a Statement of Organization. The Statement of Organization listed an address in Austin, Texas and provided two committee email addresses, one of which was held by Individual 5. Progressive Priorities identified Individual 2 as the PAC Director and Individual 5 as the Treasurer.

38.  On or September 23, 2016, TUNSTALL and REYES caused Progressive Priorities to amend its Statement of Organization to remove Individual 5's email address and identify Individual 2 as the Treasurer in place of Individual 5.

39.  On or about December 1, 2016, TUNSTALL and REYES caused Progressive Priorities to amend its Statement of Organization to identify Individual 3 as its Treasurer and Director, without Individual 3's knowledge or performance of the responsibilities of that role.

40.  On or about August 15, 2019, the FEC sent a letter, addressed to Individual 3, to advise that Progressive Priorities had failed to file a mid-year report for 2019. That same day, TUNSTALL and REYES caused Progressive Priorities to amend its Statement of Organization to identify TUNSTALL as its Treasurer.

11

41. From on or about July 11, 2016, through on or about July 31, 2017, TUNSTALL and REYES caused Progressive Priorities to report to the FEC that it raised approximately $389,539 for the period from on or about April 1, 2016, through on or about October 1, 2016. TUNSTALL and REYES further caused Progressive Priorities to report total disbursements of approximately $375,605 for this period.

   ii. *Misrepresentations to Potential "Contributors"*

42. TUNSTALL, REYES, and DAVIES caused Progressive Priorities to use Company A's platform to solicit money from the public through false and misleading representations, including the below.

   - [*Voice of Candidate 1*]: Like any family, our American family is strongest when we cherish what we have in common and fight back against those who would drive us apart. [*Voice of Announcer*]: Have [Candidate 2]'s back against [Candidate 1] today by investing generously to help elect [Candidate 2] as the first female president in U.S. history. Do your part to make an emergency investment to the campaign by pressing 1 now. For contributing $25 or more, we'll give you a free [Candidate 2] 2016 sticker or, if you generously find yourself able to give $1,000 or more, we'll send you out an exclusive signed photo of [Candidate 2] herself, suitable for framing. So please, press 1 right now to make an emergency investment in the campaign to elect [Candidate 2] for President. Again, please press 1 to make an emergency contribution right now. To unsubscribe, press 8.

   - [*Voice of Candidate 2*]: Like any family, our American family is strongest when we cherish what we have in common and fight back against those who would drive us apart. [*Voice of Announcer*]: Have [Candidate 2]'s back against [Candidate 1]

today by investing generously to help elect [Candidate 2] as the first female president in U.S. history. Do your part to make an emergency investment to the campaign by pressing 1 now. For contributing $25 or more, we'll give you a free [Candidate 2] 2016 sticker or, if you generously find yourself able to give $1,000 or more, we'll send you out an exclusive signed photo of [Candidate 2] herself, suitable for framing. So please, press 1 right now to make an emergency investment in the campaign to elect [Candidate 2] for President. Again, please press 1 to make an emergency contribution right now. To unsubscribe, press 8.

43. TUNSTALL, REYES, and DAVIES provided scripts to be used by live call center operators when individuals who received Progressive Priorities robocalls agreed to make a contribution. These scripts used false and misleading representations, including the below.

- Hello, this is , Thank you for supporting our efforts to ensure [Candidate 2] wins the presidency. . . . [Candidate 2] still needs millions of supporters to show that [s]he has the votes to win, including yours. Will you be supporting her with a gift of $100 or $200?

44. TUNSTALL, REYES, and DAVIES also caused Progressive Priorities to solicit money online through its website, which included a description of Progressive Priorities as "a federal political committee that makes contributions to federal and state candidates and committees."

### iii. *Other Acts involving Progressive Priorities Political Action Committee*

45. On or about November 30, 2016, DAVIES sent an email, with the subject, "PPP App," to Individual 4. Attached to the email was a document entitled "Merchant Application and

13

Agreement," identifying Individual 3 as "PAC Director" for Progressive Priorities and purporting to bear Individual 3's signature.

46. On or about December 6, 2016, DAVIES sent an email, with the subject, "Signer docs for bank," to his then-girlfriend with documents relating to Progressive Priorities, which DAVIES described as "all the forms she needs." Among the attachments was a document entitled "Unanimous Decision of Directors," with a signature line for "Individual 3, Director," which DAVIES stated that "she needs to sign . . . after printing."

47. On or about December 12, 2016, DAVIES scanned a version of the Unanimous Decision of Directors that purported to bear Individual 3's signature to his email account and, a few minutes later, sent a copy to REYES and Individual 4, with the message, "here you go."

### C. Laundering of Funds Through Company A

48. Between on or about June, 16, 2016, and on or about April 12, 2017, TUNSTALL and REYES overpaid Company A with contributions obtained by Liberty Action Group and Progressive Priorities, and then arranged for Company A to wire the excess funds to bank accounts held by Modern Media, Supreme Dream, and Matte Media. In total, Company A wired approximately $353,000 to these accounts controlled by TUNSTALL and REYES through approximately 22 separate transactions, including the transactions described below.

49. On or about January 30, 2017, TUNSTALL sent an email, with the subject "ach request on Dan Democrat Data," instructing Company A to "please ach $50,000 from Progressive Priority PAC . . . and send $25,000 to: Matte Media . . . and send $25,000 to: . . . MODERN MEDIA."

50. On or about February 6, 2017, TUNSTALL, copying a representative from Company A, sent an email to REYES, writing "Rob, can you print and have director fill out."

Attached to the email was a Company A Credit/Debit Authorization Form. Later that day, REYES responded to TUNSTALL alone: "Is this to get our funds from PPP? Do I sign as [Individual 1] with LAG bank information?" Seven minutes later, REYES sent a copy of the Company A Credit/Debit Authorization Form that purported to bear Individual 1's signature to TUNSTALL and the representative from Company A, with the message, "Is this what you're looking for?"

51. On or about February 6, 2017, TUNSTALL responded to REYES, "No it's progressive not lag , rob refill out with progressive info."

52. The following day, on or about February 7, 2017, REYES sent a scanned copy of the Company A Credit/Debit Authorization Form, purportedly bearing Individual 3's signature, to TUNSTALL and the representative from Company A.

53. On or about February 7, 2017, TUNSTALL sent an email, with the subject "Urgent- - ACH Request (Existing, Please Finalize Today)," instructing Company A to "[p]lease finalize sending the $50k that was pulled by sending $25,000 to: Matte Media . . . and sending $25,000 to: . . . MODERN MEDIA."

54. On or about February 7, 2017, Company A transferred approximately $25,000 to Matte Media.

55. On or about February 7, 2017, Company A transferred approximately $25,000 to Modern Media.

All in violation of 18 U.S.C. § 371.

### COUNTS TWO, THREE, and FOUR
### 18 U.S.C. §§ 1343 and 2
### (Wire Fraud)

56. Paragraphs 1 through 19 and 30 through 55 are incorporated and re-alleged as if fully set forth herein.

57.   Beginning in and around January 2016, and continuing until at least in and around April 2017, in the Western District of Texas and elsewhere, Defendants MATTHEW NELSON TUNSTALL, ROBERT REYES, JR., and KYLE GEORGE DAVIES, aided and abetted by each other and by others known and unknown, devised and intended to devise a scheme and artifice to defraud donors to political action committees they operated, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

58.   On or about the dates set forth below, in the Western District of Texas and elsewhere, Defendants MATTHEW NELSON TUNSTALL, ROBERT REYES, JR., and KYLE GEORGE DAVIES, aided and abetted by each other and by others known and unknown, for the purpose of executing the above-described scheme and artifice to defraud and deprive, transmitted, and caused to be transmitted by means of wire communications in interstate commerce, the following writings, signals, and sounds:

| Count | Date | Description |
| --- | --- | --- |
| Two | December 23, 2017 | Interstate electronic wire communication caused by the transfer of approximately $57,000 from Liberty Action Group Political Action Committee, Financial Institution A Account XXXX156, to Modern Media Group LLC |
| Three | December 27, 2016 | Interstate electronic wire communication caused by the transfer of approximately $50,000 from Liberty Action Group Political Action Committee, Financial Institution A Account XXXX156, to MATTHEW NELSON TUNSTALL |
| Four | March 3, 2017 | Interstate electronic wire communication caused by the transfer of approximately $2,000 from Liberty Action Group Political Action Committee, Financial Institution A Account XXXX156, to KYLE GEORGE DAVIES |

All in violation of 18 U.S.C. §§ 1343 and 2.

## COUNTS FIVE AND SIX
## 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2
## (Money Laundering)

59. Paragraphs 1 through 19 and 30 through 55 are incorporated and re-alleged as if fully set forth herein.

60. On or about the dates listed below, in the Western District of Texas and elsewhere, Defendants MATTHEW NELSON TUNSTALL and ROBERT REYES, JR., aided and abetted by each other and by others known and unknown, knowing that the property involved in the financial transactions listed below represented the proceeds of some form of unlawful activity, knowingly and intentionally conducted and caused to be conducted the financial transactions designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, which was wire fraud in violation of Title 18, United States Code, Section 1343, and each transaction involving the use of a financial institution engaged in and the activities of which affected interstate commerce, in that TUNSTALL and REYES caused the transfer of funds from Company A to the bank accounts listed below:

| Count | Date | Financial Transaction | Amount |
|---|---|---|---|
| Five | February 7, 2017 | Transfer from Company A, Financial Institution B Account XXXX5868, to Modern Media Group LLC, Financial Institution A Account XXXX3932 | $25,000 |
| Six | February 7, 2017 | Transfer from Company A, Financial Institution B Account XXXX5868, to Matte Media Creations, Financial Institution C Account XXXX8422 | $25,000 |

All in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

## COUNTS SEVEN AND EIGHT
## 18 U.S.C. §§ 1957 and 2
### (Money Laundering)

61. Paragraphs 1 through 19 and 30 through 55 are incorporated and re-alleged as if fully set forth herein.

62. On or about the following dates, in the Western District of Texas and elsewhere, Defendants MATTHEW NELSON TUNSTALL and ROBERT REYES, JR., aided and abetted by each other and by others known and unknown, did knowingly and intentionally engage in a monetary transaction in criminally derived property of a value greater than $10,000 which was derived from specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343, to wit, on or about the dates alleged below, TUNSTALL and REYES transferred funds from bank accounts held by Liberty Action Group and Progressive Priorities to Company A, and then directed Company A to transfer funds to bank accounts controlled by TUNSTALL and REYES in the amounts set forth below:

| Count | Date | Monetary Transaction | Amount |
|---|---|---|---|
| Seven | February 7, 2017 | Transfer from Company A, Financial Institution B Account XXXX5868, to Modern Media Group LLC, Financial Institution A Account XXXX3932 | $25,000 |
| Eight | February 7, 2017 | Transfer from Company A, Financial Institution B Account XXXX5868, to Matte Media Creations, Financial Institution C Account XXXX8422 | $25,000 |

All in violation of 18 U.S.C. §§ 1957 and 2.

## NOTICE OF FORFEITURE
### (28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 982(a)(1))

63. Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to Defendants MATTHEW

NELSON TUNSTALL, ROBERT REYES, JR., and KYLE GEORGE DAVIES that in the event of his conviction of any of the offenses charged in Counts One through Four of this Indictment, all property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from such offense, is subject to forfeiture.

64. Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to Defendants MATTHEW NELSON TUNSTALL and ROBERT REYES, JR. that upon conviction of any of offenses charged in Counts Five through Eight of the Indictment, all property, real or personal, involved in money laundering offenses or traceable to such property, is subject to forfeiture.

65. Defendants MATTHEW NELSON TUNSTALL, ROBERT REYES, JR., and KYLE GEORGE DAVIES are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

66. Defendants MATTHEW NELSON TUNSTALL, ROBERT REYES, JR., and KYLE GEORGE DAVIES are notified that in the event that property subject to forfeiture, as a result of any act or omission of a defendant,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendant up to the total value of the property subject to forfeiture pursuant to Title 21, United States Code, Section 853(p), as

incorporated by reference in Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original signed by the foreperson of the Grand Jury

11/2/21
DATE

Corey R. Amundson
Chief, Public Integrity Section

*Rebecca Schuman*
REBECCA M. SCHUMAN, Trial Attorney
MICHAEL N. LANG, Trial Attorney