UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | **CRIMINAL NO. 21-CR-223-RP** |
| | § | |
| MATTHEW NELSON TUNSTALL, | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
### TO VACATE HIS CONVICTION PURSUANT TO 28 U.S.C. § 2255

Beginning in and around the 2016 Presidential Election, Matthew Tunstall concocted a complex multi-year scheme to defraud thousands of victims in a nationwide, political fundraising scam that tricked small donors into contributing millions of dollars to sham political action committees ("PACs") that he controlled. As part of this scheme, Tunstall intentionally misrepresented to victims that these PACs would use their contributions to support the leading candidates and their campaigns in the 2016 Presidential Election. Rather than use the donations to support these and other causes, Tunstall, and individuals that he recruited to the scheme, misappropriated nearly every cent of the millions gained in contributions for his own personal benefit, the benefit of his co-conspirators, the benefit of his PACs and preferred vendors, and the benefit of his companies and business ventures unrelated to the PACs. Tunstall also laundered the fraudulently generated proceeds through one of his vendors, manipulated mandatory reports to the Federal Election Commission ("FEC") to cover his tracks, and provided false and highly misleading information to federal and state authorities, to vendors, and even to those in his employ to conceal his fraudulent, criminal conduct.

In 2021, Tunstall, along with two associates, was indicted on various charges that alleged wire fraud and money laundering as part of the scheme. On December 20, 2022, the defendant

pleaded guilty to Count One of the Indictment, charging him with conspiracy to commit wire fraud and to cause false statements to the FEC, in violation of 18 U.S.C. § 371, and Count Five of the Indictment, charging him with money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.  In exchange, the government agreed to and did dismiss six charges against Tunstall at sentencing.  The Indictment also included a wire fraud forfeiture allegation, and in a pre-sentencing motion for forfeiture, which the defendant did not oppose, the government sought a forfeiture money judgment in the amount of $789,818.00, which constituted the defendant's personal proceeds of his fraud.  ECF No. 110.  While the parties did not agree on the loss amount, the parties stipulated that the two PACs Tunstall operated, Liberty Action Group and Progressive Priorities PAC, received approximately $3.96 million combined in contributions from donors.  Factual Basis for a Plea of Guilt, ECF No. 93, at ¶ 16.

On April 24, 2023, U.S District Judge Lee Yeakel sentenced Tunstall to 120 months incarceration followed by three years of supervised release.  Tunstall now seeks to vacate his conviction, alleging that his counsel Worth Carroll, of Sumpter & González, LLP ("Carroll"), was constitutionally ineffective by failing to notify Tunstall of the option of an "open plea" to the indictment without waiving certain appellate rights that Tunstall surrendered in the negotiated plea he accepted.  In failing to do so, Tunstall's argues that counsel deprived him of the opportunity to advance and possibly win "an imaginative and novel argument for loss calculation" before the Fifth Circuit Court of Appeals.  ECF 163 at 10.

Tunstall's claims are meritless.  Tunstall has failed to demonstrate that his defense counsel's performance was constitutionally deficient – outside the wide range of reasonable professional assistance—and that he was prejudiced by counsel's alleged deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Accordingly, Tunstall's motion should

be denied without a hearing.

I.      Factual and Procedural Background

As summarized in the November 2021 indictment, Tunstall was responsible for concocting the fraudulent political fundraising scheme that he employed during the 2016 election season and when his efforts drew scrutiny from the U.S. Federal Election Commission, state authorities, private litigants who brought lawsuits against his entities and employees, and, ultimately, members of the media which highlighted his fraudulent conduct, Tunstall closed down the political action committees he used to perpetrate the fraud, and began fundraising with new political action committees that emulated the methods employed in his 2016 scheme.  Tunstall rejected the government's first plea overture in the middle of 2022, to which Tunstall would have pleaded guilty to Count One (conspiracy) and Count Three (wire fraud) of the indictment.  *See* ECF No. 165-1 at 1 (letter from Tunstall's counsel following the government's first plea offer).  However, after several of Tunstall's associates and co-defendant's pleaded guilty, he entered plea negotiations in the months immediately preceding the January 2023 pre-trial motions deadline. *See* ECF No. 165-2 (letter from Tunstall's counsel following the government's second plea offer). After weeks of negotiations, Tunstall pleaded guilty to Counts One and Five of the indictment on December 20, 2022.[1]  The parties agreed to leave open contested issues for litigation at sentencing, among them how the approximate $3.96 million that Tunstall and his confederates fraudulently raised from contributors as part of the scheme would be calculated as the considered loss amount when calculating Tunstall's advisory guidelines range.

---

[1] During those negotiations, the government directed Carrol to Tunstall's subsequent action after indictment, which was a facsimile of the 2016 conduct for which Tunstall was indicted (i.e., establishing and operating new fraudulent political action committees under new names to solicit contributions from political donors using highly misleading and fraudulent representations).  Tunstall's subsequent conduct was not incorporated into his plea documents; however, the issue of his subsequent conduct was raised and discussed with counsel.

At Tunstall's sentencing hearing, which was held over two days April 20 and 24, 2023, the parties contested various applicable sentencing enhancements, which included the loss amount calculation under U.S. Sentencing Guideline 2B1.1(b). The U.S. Probation Office applied an 18-level increase to the Tunstall's base offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(J) (loss of more than $3.5 million but less than $9.5 million). *See* Presentence Investigation Report ¶ 64. That enhancement was based on the Probation Office's finding that "Tunstall is responsible for the $3.96 million raised under false pretenses through Liberty Action Group and Progressive Priorities," as well an $3.69 million that Tunstall raised via other PACs that was not charged in the Indictment. *Id.* ¶ 54. The government agreed with the Probation Office's calculation of the loss amount, arguing that the loss amount should be calculated based on the total funds the two PACs obtained from the victims of the fraud, which was approximately $3.96 million. *See* ECF No. 122, at 9–13.

Tunstall objected to the Probation Office's loss calculation and argued that the loss amount was approximately $1.6 million, resulting in a 16-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(I) (loss of more than $1.5 million and less than $3.5 million). *See* ECF No. 123, at 9–12. Tunstall contended that the PACs performed "legitimate services," arguing that the PACs "spent millions of dollars to reach thousands of voters with the candidates' respective campaign messaging – resulting in millions of minutes of direct voter outreach." *Id.* at 9–10. He argued that the loss amount should be reduced by the "fair market value of the . . . services rendered" pursuant to §2B1.1 cmt. N.3(E)(i), or in the alternative, that the loss amount should be calculated based on the gain to Tunstall and his co-defendant rather than the victims' loss. *See id.* at 10–11. In response to Tunstall's objections, the Probation Office stated that "the defendants incurred expenses in order to continue their criminal activity; that is, to continue to raise money based on false and misleading

representations. These expenditures were essential for the scheme to continue to operate. According to §2B1.1 Application Note 3(E), the instances where credits against loss can be applied are limited, and this situation is not covered by the guideline." PSR Addendum, at 2A.

At the hearing, the government presented extensive evidence rebutting Tunstall's contentions that the two PACs performed any legitimate services. The government presented samples of the false and misleading fundraising messages broadcast by the two PACs and elicited testimony from the case agent that all the purported "voter outreach" performed by the PACs in fact involved fraudulent solicitations for money, which was then used to enrich the defendants and fund additional fraudulent solicitations. *See* Sent'g Hr'g Tr. 17–24, Apr. 20, 2023 (ECF No. 153).

The Court ruled that the "government ha[d] proved by a preponderance of the evidence that the loss amount was at least $3.9 million," and noted that it "did not find that there is $400,000 worth of give[2] in that based on the evidence I have in front of me" Sent'g Hr'g Tr. 11–12, Apr. 23, 2023 (ECF No. 154).The Court incorporated the specific offense characteristic for loss value, along with a four-level aggravating role adjustment for Tunstall's leadership of the scheme. The Court calculated Tunstall's total offense level as 34, which was accompanied by an advisory Guidelines range of 151 to 188 months. The Court imposed a below-Guidelines sentence of 120 months and ordered the payment of $789,818 in restitution, the amount which the parties identified in the negotiated plea agreement. Judgment on the sentence entered on April 24, 2023. ECF No. 138.

Tunstall was represented by Carroll throughout his prosecution until Carroll's termination on June 6, 2023. On May 8, 2024, Tunstall filed a motion and two amended motions to vacate his

---

[2] The Court's comment reflected the $1,500,000 million but less than $3,500,000 loss level – the next level below under 2B1.1(b)(1)(J), which was accompanied by a plus-16 increase to the base offense level, was not within the margins of the amounts disputed at sentencing.

conviction through new counsel pursuant to 28 U.S.C. § 2255.  Tunstall's claim should be denied in its entirety.

II.     Tunstall's Claims

Tunstall asserts one claim for relief on ineffective assistance of counsel based on his attorney's deficient performance.  Tunstall asserts that Carroll, a "fine attorney" who "sold himself short," failed to notify him of the option of entering an open plea without waiving appeal, which Tunstall now asserts would have been "the correct choice."  ECF No. 163 at 8-9.  Tunstall admits that "from the beginning" he did not want to go to trial but asserts that he was never advised that he could have pleaded guilty without an agreement with the government and that Carroll took it upon himself to negotiate a plea agreement with the government.  *Id.* at 1-2. Tunstall argues that in waiving his appellate rights via a negotiated plea, he was deprived of his right to argue "a 'novel and imaginative argument' . . . more 'vigorously'" to the Circuit Court about the application of the enhancements for loss amount and adjustments at sentencing to which he objects.[3]

Tunstall's ineffective assistance allegations fail to meet the threshold requirements of deficient performance or prejudice under *Strickland*.  Tunstall cannot establish how he suffered prejudice by the failure to be advised of an open plea or that he would have availed himself of that choice.  Moreover, forgoing an open plea which Tunstall now claims should have been asserted would not only have been an objectively reasonable tactical decision for his counsel to make, considering the voluminous and largely uncontested evidence of his guilt, it was a sound and unassailable strategic decision that fell easily within the wide range of competent performance presumed by the courts.  In sum, Tunstall received his constitutionally mandated defense from a

---

[3] The gravamen of Tunstall's claim focuses nearly exclusively on the calculation of the fraud loss amount, although he also references the aggravating role adjustment that the Court imposed at trial as among the issues Tunstall might have challenged on appeal; however, the evidence supporting the application of the aggravating role enhancement for leadership that Tunstall received is uncontroverted.

highly skilled, conflict-free attorney throughout his prosecution and he has failed to demonstrate otherwise or prejudice from that representation.  His claims should be denied without a hearing.

III.     Legal Analysis

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel.  *See Yarborough v. Gentry*, 124 S. Ct. 1, 4 (2003).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668 (1984).  A defendant asserting ineffective assistance of counsel therefore must demonstrate that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense.  *Id*.  "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."  *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997).  "A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."  *Armstead v. Scott*, 37 F.3d 02, 210 (5th Cir. 1994).

"The performance prong of Strickland requires a defendant to show that counsel's representation fell below an objective standard of reasonableness."  *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (internal quotation marks and citation omitted).  "Therefore, courts may not fall prey to 'the distorting effect of hindsight' but must be 'highly deferential' to counsel's performance."  *Carter*, 131 F.3d at 463 (quoting *Strickland*, 466 U.S. at 669).  "Hence, there is a strong presumption that the performance 'falls within the wide range of reasonable professional assistance.'"  *Id*. (same).  The heavy burden is on the petitioner to overcome this presumption.  *Id*.

To establish *Strickland* prejudice a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Courts evaluate prejudice in view of the totality of the evidence, rather than any alleged error in isolation. *Id.* at 695–96. In the guilty-plea context, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Missouri v. Frye*, 566 U.S. 134, 148 (2012) (stating that to establish prejudice the defendant must "show a reasonable probability that the end result of the criminal process would have been more favorable" to him). Court's often address the actual prejudice prong first, "because this course of action is less burdensome to defense counsel" and the judicial system. *See Strickland*, 466 U.S. at 694.

IV.     Whether or not Counsel's Performance was Deficient, Tunstall's Claim Fails the Actual Prejudice Prong of *Strickland*

An "open" guilty plea is a guilty plea entered into without the benefit of a plea agreement. To show prejudice, a petitioner must demonstrate that counsel's "constitutionally ineffective performance affected the outcome of the plea process. *Lafler*, 566 U.S. at 163, quoting *Hill*, 474 U.S. at 59.

Prejudice in this context includes showing that but for his counsel's failure to advise, there is a reasonable probability that Tunstall would have entered an open guilty plea before trial. *United States v. White*, 834 Fed.Appx. 108, 116 (5th Cir. 2021). Further, the Supreme Court has stated that petitioners like Tunstall must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, 566 U.S. 134, 147 (2012). Tunstall argues that had he been made aware of the open plea, it was an option he would have chosen. ECF No. 163 at 9.

In his petition, Tunstall attaches two letters from Carroll detailing two plea offers the

government extended him, including the plea offer Tunstall ultimately accepted.  ECF No. 163-1 and ECF No. 163-2).  In the correspondence addressing the plea offer Tunstall ultimately accepted, Carroll states, "[r]egardless, I believe this plea allows you the opportunity to avoid trial (like you told me you wanted to do) and plead guilty (like you told me you wanted to do), while also allowing you the ability to contest the loss amount (like you told me you wanted to do)."  *Id*.  Carroll further states "[a]s I discussed in my last letter and have many times since, the Judge is the ultimate decider of your sentence" later noting that "you lose the right to appeal – even if the Judge sentences you to a disproportionately high amount." *Id.*

Tunstall cannot reasonably show that he would have entered an open guilty plea before trial.  As recognized by other judges in this Circuit, open pleas generally result in longer sentences for criminal defendants.  *See United States v. Guice*, No. 08-cr-140, 2012 WL 2133651, at *5 (S.D. Miss. June 11, 2012) (noting that sentences as a result of open pleas come (1) without the Government's lower guidelines recommendation; (2) consideration by the Court of the parties' agreement and cooperation in exchange for the a rights waiver; and (3) the denial of the third point for acceptance of responsibility).  First, it is extremely likely, if not a certainty, that Tunstall would have received at least the same, if not a harsher, sentence rendered by the Court if he was left to plead guilty to the remaining charges in the indictment given that the government allowed Tunstall to challenge all enhancements in the negotiated plea agreement he now contests. Nothing prevented Tunstall from litigating the enhancements contested at sentencing – and Tunstall fails to note in any way how he was prejudiced, factually or legally, from the Court's consideration of those arguments.  Moreover, in an open plea, the government would have refrained from moving for the 1-point reduction for acceptance of responsibility.  All this considering the affirmative evidence offered by Tunstall himself that he wanted to avoid trial and plead guilty (*See* ECF No.

165-2, at 1), Tunstall cannot show a reasonable probability that he would have entered an open plea, let alone that he was prejudiced by not being advised of such.

Tunstall argues that he suffered prejudice because his plea agreement included a waiver of his right to appellate review of the district court's loss calculation.  To prevail on his claim, Tunstall bears the burden to show a reasonable probability of success on appeal.  *See United States v. Redd*, 619 Fed.Appx. 333, 337 (5th Cir. 2015) ("for failing to raise an issue on appeal, [an appellant] must show that with effective counsel, there was a reasonable probability that he would have won on appeal.");  *United States v. Garcia, Nos*. 09–40031–02–SAC, 11–4005– SAC, 2011 WL 4688850, at *4 (D. Kan. Oct. 6, 2011) (finding no prejudice and holding that "defendant offers no showing of prejudice from having waived his right to a direct appeal. He does not identify or discuss any appellate issues that probably would have vacated his conviction or lowered his sentence").

Tunstall cannot carry that burden for two reasons.  First, a "district court's determination of the amount of loss is a factual finding reviewed for clear error, and the court receives 'wide latitude to determine the amount of loss and should make a reasonable estimate based on available information.'"  *United States v. Turner*, 344 Fed.Appx 992, 993 (5th Cir. 2009) (quoting *United States v. Jones*, 475 F.3d 701, 705 (5th Cir. 2007)).  The reviewing court must determine "whether the sentencing court applied an acceptable method of calculating the amount of loss, which must bear a reasonable relation to the actual harm of the offense."  *United States v. Jones*, 475 F.3d 701, 705 (5th Cir. 2007).  The Fifth Circuit will "uphold a district court's factual finding on clear error review so long as the enhancement is plausible in light of the record as a whole."  *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006).

Tunstall's motion does not even attempt to explain how he would have met this standard

had he preserved his right to appeal by taking an open plea.  Tunstall's conclusory contentions fail to identify any concept of prejudice beyond a faithful reproduction of his counsel's salient arguments on loss calculations, which the Court rejected.   Conversely, at sentencing the government successfully argued that preponderant evidence demonstrated an approximately $3.9 million-dollar actual loss amount that that was a 'reasonably foreseeable pecuniary harm that resulted from the [fraud].'"  *United States v. Ayika*, 837 F.3d 460, 467 (5th Cir. 2016), and the Court's determination was "a reasonable estimate of loss." *United States v. Murray*, 648 F.3d 251, 255 (5th Cir. 2011).  Moreover, Tunstall does not argue how he would overcome the binding precedent in this Circuit upholding loss amount calculation for total loss to paid by the victims, notwithstanding any claims of real work done by those engaged in the crime that might have offset that loss. *See United States v. Read*, 710 F.3d 219, 231 (5th Cir. 2012) (upholding loss calculation based on "the total amount paid by the victims" notwithstanding the defendants' claim that they "'did real work' to earn most of that money").

Second, in the unlikely event that the Fifth Circuit found that the district court's loss calculation was clear error, it would have determined that such error was harmless.  Tunstall received a below-Guidelines sentence of 120 months—30 months below the advisory Guidelines range of Tunstall's level 34 total offense level.  And while the Court ultimately accepted the 18-level enhancement originally calculated by the U.S. Probation Office, even had the Court accepted the defendant's proposed 16-level adjustment for loss, the practical import of a 2-level reduction would have lowered Tunstall's advisory total Guidelines level to 32, which would have been accompanied by advisory range of 121-151 months, which the defendant's 120-month sentence still fell below.

When a sentencing court applies an incorrect Guidelines range, the error is harmless if

"the district court considered both ranges (the one now found incorrect and the one now deemed correct) and explained that it would give the same sentence either way." *United States v. Kinzy*, 2023 WL 4763336, at *8 (5th Cir. July 25, 2023) (quoting *United States v. Guzman-Rendon*, 864 F.3d 409, 411 (5th Cir. 2017)).  Here, the district court considered both the government's and Tunstall's proposed Guidelines ranges, as that issue "featured prominently in the parties' written sentencing materials and at the sentencing hearing." *Id*. at *9.  Moreover, the Court explicitly stated that it would have imposed the same sentence either way.  At the conclusion of the hearing, the Court reviewed the 3553 factors in detail, indicating that Mr. Tunstall's was "an extremely serious crime" and a "sophisticated scam" that "strikes at the very heart of the political process." *Id.* at 42.  The Court reviewed the history and characteristics of the defendant, noting that his motive "appears to have been greed." *Id.*  And the Court indicated that it had considered the need to "afford adequate deterrence to criminal conduct not only by this defendant, but others." *Id.* at 43.  Having explained the basis for the sentence, the Court further remarked:

> [L]et me say that the sentence I am going to impose is the sentence that I think is a reasonable sentence to impose in this case based on all of [the] facts and circumstances that I've discussed and is the sentence that I would impose in this case had we not had guidelines, because I find this to be a reasonable sentence based on this defendant's background and all the other factors.

*Id.* at 44–45.  Accordingly, had Tunstall preserved his right to appeal by entering an open plea, the Fifth Circuit would have found any error in the Guidelines calculation harmless under *Kinzy*.  For these reasons, Tunstall cannot show prejudice under *Strickland* and his petition should be denied without a hearing.

V. **Tunstall has failed to show that his counsel rendered ineffective assistance through deficient performance**

Tunstall contends that his guilty plea was the product of ineffective assistance of counsel

because he was not notified of the option of an "open plea." That failure, Tunstall alleges, deprived him of the right to argue on appeal for a lower loss calculation, an argument that Tunstall admits would be "a novel and imaginative argument" defending the calculation of the victim loss incurred because of his fraudulent conduct. ECF No. 163 at 10. But Tunstall's allegations do not credibly demonstrate that his counsel's performance was deficient. "[A] guilty plea cannot be attacked based on inadequate legal advice unless counsel was not a 'reasonably competent attorney' and that the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Strickland*, 446 U.S. at 667 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). A defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [this standard]." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). There is no indication in the record that Carroll was not acting as a "reasonably competent attorney" within the range demanded of criminal defense attorneys. "[S]trategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based." *Strickland*, 466 U.S. at 681. Even in this filing, Tunstall noted his prior counsel's calculated approach and effort to advance a reasonable, if unsuccessful, argument for the Court's consideration, despite the scope and breadth of the evidence of his fraudulent conduct. *See* ECF No. 165 at 6-8.

Tunstall's claim of deficient performance merely amounts to a second-guessing of a defense strategy – one for which he advocated – that turned out to be unavailing. Tunstall's own submissions, the petition and its two attachments, reveal that Tunstall sought to challenge the basis for calculating loss amount. Tunstall's mounted a robust challenge about the basis for the loss calculation, much of which Tunstall notes in his application. Despite this, Tunstall notes that the

arguments that his counsel advanced "were not persuasive to the Court." *Id.* at 8.

It is impossible to consider the steps that Carroll took without also considering the larger context of the government's case against Tunstall – a context which Carroll outlined for Tunstall on multiple occasions that described the government's evidence against Tunstall as "strong" and that realistic possibility that a trial would likely result in a "long guilty plea."    If the Tunstall had entered an "open plea," Tunstall would not have been able to dismiss the additional criminal counts with which he had been charged, the government would not have moved nor would Tunstall have received the third point reduction for acceptance of responsibility, and the government very likely would have continued to investigate the defendant's subsequent criminal conduct.  Tunstall would then have appeared at sentencing with the near-certain probability of receiving a higher offense level calculation, and the very real possibility of additional criminal exposure for the reasons detailed here.

Tunstall's current petition asks the Court to overlook the repeated efforts of a diligent counsel who negotiated two plea agreements with the government over the course of a year, an advocate who diligently memorialized the repeated instances of a client who expressed no interest in going to trial and to plead guilty.  Moreover, Tunstall's petition disregards the honest and candid advice of an engaged advisor who provided competent representation painstaking and explicit detail regarding the pros and cons of resolving his client's case by trial or through a negotiated plea with the government that would preserve his client's desire to argue certain facets of loss calculations at sentencing.   Critically, Tunstall's counsel's advice specifically and explicitly outlined the consequences of an appellate waiver if the Court disagreed with their argument.  *See* ECF No. 165-2 ("And, importantly for sentencing, you lose the right to appeal – even if the Judge sentences you to a disproportionately high amount").  Tunstall has failed to demonstrate that his

counsel's performance fell below an objective standard of reasonableness under *Strickland* and his request should be denied without a hearing. *See Strickland* 466 U.S. at 687-88.

VI.     Conclusion

For the reasons articulated herein, Tunstall's request for relief pursuant to 28 U.S.C. § 2255 should be denied without a hearing.

DATED:          May 21, 2024

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section

BY:    */s/ Michael N. Lang*
Michael N. Lang
Celia R. Choy
Trial Attorneys
Public Integrity Section
United States Department of Justice
1301 New York Ave, NW
Washington, DC 20530
E-mail: Michael.Lang@usdoj.gov
E-mail: Celia.Choy@usdoj.gov
Telephone: (202) 514-1412

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, and forwarded a paper copy of this filing to the defendant as follows:

>   Matthew Nelson Tunstall
>   BOP Inmate ID: 73685509
>   FCI Mendoza
>   P.O. Box 9
>   Mendoza, CA 93640


Dated: May 21, 2024                  */s/ Michael N. Lang*
                                     Michael N. Lang
                                     Celia R. Choy
                                     Trial Attorneys